IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| ROBIN SIMON FISCHER,<br><br>    Plaintiff,<br><br>vs.<br><br>INTERNATIONAL STUDENT EXCHANGE, INC.; STUDENT MANAGEMENT GROUP, INC.; and THEODORE R. PREISS,<br><br>    Defendants.<br>_____<br>THEODORE R. PREISS,<br><br>    Counter Claimant,<br><br>vs.<br><br>ROBIN SIMON FISCHER,<br><br>    Counter Defendant. | CV 14–52–BU–DWM<br><br>ORDER |

### INTRODUCTION

Defendants International Student Exchange, Inc. and Student Management Group, Inc. move to dismiss Plaintiff Robin Simon Fischer's claims against them, arguing failure to state a claim. (Doc. 51.) Fischer filed suit against International

1

Student Exchange and Student Management Group, alleging negligence, alter ego liability, and breach of contract. (Doc. 45.) Fischer also sued his Montana host parent, Defendant Theodore Preiss, for assault, battery, and negligence. (*Id*.) The alter ego and negligence claims against Student Management Group are dismissed without prejudice. The breach of contract claim against International Student Exchange is dismissed with prejudice.

## BACKGROUND

International Student Exchange is a California nonprofit corporation with its principal place of business in New York. (Stip. Facts, Doc. 70 at 4.) It is in the business of bringing foreign exchange students to the United States to live with American host families, and to that end, it was designated by the United States Department of State as a Department of State Exchange Visitor Program in 1984. (*Id.* at 5.) Student Management Group is a New York corporation with its principal place of business in New York. (*Id*.) Wayne E. Brewer is the CEO of International Student Exchange and the President of Student Management Group, and the two corporations share a business address in New York. (*Id.* at 4–5.)

In 2010, International Student Exchange entered into a contract with a German company, Educational Consulting and Student Exchange. (Doc. 53-1.) Pursuant to this contract, International Student Exchange agreed to locate and

screen families in the United States that would serve as hosts for German students who had contracted with Educational Consulting and Student Exchange to facilitate a study abroad experience. (*Id*.; Doc. 45 at 4.) In return, Educational Consulting and Student Exchange would promote International Student Exchange's program in Germany and recruit students to be hosted by families in the United States. (Doc. 52 at 3.) In 2011, Fischer contracted with Educational Consulting and Student Exchange for placement as a foreign exchange student in the United States. (Doc. 45 at 4.) He is a citizen of Grosskrotzenburg, Hessen, Germany. (Stip. Facts, Doc. 70 at 4.) Around August of 2011, International Student Exchange approved the Preiss family of Belgrade, Montana as a host family for Fischer, and Fischer was then placed with that family. (Doc. 45 at 5.)

On or around September 2, 2011, Fischer moved into the Preiss family home in Belgrade. (Stip. Facts, Doc. 70 at 5.) As a host parent, Preiss had certain duties toward Fischer, including providing food, transportation, and a safe and comfortable living situation. (*Id*. at 5.) Fischer claims in his Amended Complaint that around December 23, 2011, Preiss subjected him to unwanted sexual contact by "touching his intimate body parts under the guise of 'tickling'; touching his intimate body parts, including his chest, nipples and penis, with his hands and mouth; and, performing oral sex on him." (Doc. 45 at 8.) That same evening

Fischer contacted Ashley Pulsipher, International Student Exchange's Area Representative who was responsible for monitoring Fischer's placement with his host family, and told her that he had a private, urgent matter to discuss with her. (*Id*. at 9.) Fischer reported the alleged abuse to Ms. Pulsipher during a meeting with her on December 26. (*Id*.) Ms. Pulsipher immediately informed her supervisor, Carol Toews, of the situation and Ms. Toews contacted International Student Exchange's corporate headquarters in New York. (*Id*.) Headquarters directed Ms. Toews to contact the Child and Family Services Division of the Montana Department of Public Health and Human Services. She then notified them of Fischer's report of sexual abuse. (*Id*. at 9–10.) International Student Exchange also reported the allegation of abuse to the U.S. Department of State. (*Id*. at 10.) A day later Fischer returned to Germany, December 27, 2011. (*Id*.) The Gallatin County Attorney's Office investigated Fischer's allegations of sexual abuse against Preiss but declined to press charges. (Stip. Facts, Doc. 70 at 6.)

Nearly two years later, on November 22, 2013, Fischer filed a Complaint in the Eastern District of New York against International Student Exchange, Student Management Group, and Preiss. (Doc. 1.) Preiss filed a motion pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure to dismiss the claims against him for lack of personal jurisdiction. (Doc. 32 at 1.) In the alternative, he moved for a

transfer of venue to Montana on the grounds of convenience of the witnesses. (*Id.* at 1–2.) Judge Leonard D. Wexler of the Eastern District of New York found that New York did not have personal jurisdiction over Preiss and in so doing determined venue was not proper in New York. (Doc. 39.) Judge Wexler granted without prejudice Defendants' motion to dismiss Fischer's Complaint and ordered the clerk of court to transfer the case to the District of Montana. (*Id.*) The current motion to dismiss for failure to state a claim is a motion by Defendants International Student Exchange and Student Management Group; Defendant Preiss did not join the motion.

## STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). A dismissal for failure to state a claim under Rule 12(b)(6) is proper if there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). The court accepts all factual allegations in the complaint as true and construes the pleadings in the light most favorable to the plaintiff. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir.

2005). Conclusory allegations and unwarranted inferences, however, are insufficient to defeat a motion to dismiss. *Johnson v. Lucent Techs. Inc.*, 653 F.3d 1000, 1010 (9th Cir. 2011).

## ANALYSIS

Fischer makes two claims against Student Management Group, theories based on alter ego liability and negligence. (Doc. 45 at 10, 16.) Both of these claims are also raised against International Student Exchange. (*Id*.)

**I.     Alter ego claim against Student Management Group.**

According to Fischer, he "was wronged by [Student Management Group]'s and [International Student Exchange]'s abuse of the corporate form" and the two Defendants should be treated as a single company for purposes of the imposition of liability. (*Id*. at 16–17.) Fischer supports this conclusion by alleging that Student Management Group "is the alter ego of [International Student Exchange]," that Student Management Group, "at all times relevant, acted as representative and agent of [International Student Exchange]," and that "the corporate affairs of [Student Management Group] and [International Student Exchange] are intertwined to the extent that each no longer should be considered to have a separate identity." (*Id*. at 16.) As pleaded, these allegations are insufficient to survive a motion to dismiss.

According to the Montana Supreme Court, "[p]iercing the corporate veil is an equitable remedy used to curb injustices resulting from the improper use of a corporate entity. Because the remedy is equitable, no concrete formula exists under which a court will disregard the separate identity of the corporate entity. Use of this remedy depends entirely upon the circumstances of each case." *Hando v. PPG Indus., Inc.*, 771 P.2d 956, 960 (Mont. 1989). However, the cases require the presence of two factors before a corporate form may be disregarded: "(1) [t]he corporation must be a mere agent or alter ego of the parent company; and (2) the corporate cloak must have been used to defeat public convenience, justify wrong, perpetrate fraud, or to defend crime." *Hando*, 771 P.2d at 960 (citing *State ex rel. Monarch Fire Ins. Co. v. Holmes*, 124 P.2d 994, 996 (Mont. 1942)).

Regarding the first element, a corporation "may be the mere agent of a parent company for a particular transaction if the parent company exercises control over the conduct and activities of the subsidiary so that in effect the subsidiary is merely acting on behalf of the parent." *Hando*, 771 P.2d at 960 (citing *State v. Holdren,* 387 P.2d 446, 450 (Mont. 1963)). Or it may be an "alter ego of the parent corporation if the corporate affairs of both are so intertwined that, in effect, each no longer has a separate identity." *Hando*, 771 P.2d at 960 (citing *Holmes*, 124 P.2d at 996). Fischer has not presented any facts to indicate that Student

7

Management Group acted as an agent for International Student Exchange in a particular transaction or that International Student Exchange exercised control over Student Management Group's conduct and activity. Consequently, Fischer has not alleged that Student Management Group is a mere agent of International Student Exchange and so he must rely instead on allegations that it is an alter ego.

Many factors determine whether one corporation is merely the alter ego of another.

> The full ownership of a subsidiary, use of the same people as directors and officers in both corporations, and engagement in the same general business enterprise may all be insufficient to indicate the subsidiary is merely an alter ego. Courts also look at such factors as the same type of day-to-day business activities of each corporation, sharing of the same address or name, the commingling of funds, undercapitalization of the subsidiary and failure to maintain separate business records.

*Hando*, 771 P.2d at 960 (internal citations omitted). Fischer alleges in his Complaint that Wayne E. Brewer is the CEO of International Student Exchange and the President of Student Management Group, the two corporations share a business address in New York, and they are engaged in "the same general business enterprise." (Doc. 45 at 16–17.) Fischer claims that the Defendants "may commingle funds," that International Student Exchange, "is undercapitalized," that Student Management Group "provided management and consulting services" for various exchange programs, including International Student Exchange, and that

"[Student Management Group] is the alter ego of [International Student Exchange]." (Doc. 45 at 16–17.) Although they are factors to be considered, use of the same directors and engagement in the same general business are themselves insufficient to indicate that one corporation is merely the alter ego of another. The remainder of the potentially relevant statements in Fischer's Complaint are not facts as much as recitations of the elements required to pierce the corporate veil.

Finally, regarding the second element required to pierce the corporate veil, Fischer has pled no facts to indicate that Defendants used the corporate form "to defeat public convenience, justify wrong, perpetrate fraud, or to defend crime." *Hando*, 771 P.2d at 960. Conclusory allegations and unwarranted inferences are insufficient to defeat a motion to dismiss. *Johnson*, 653 F.3d at 1010. Thus Fischer's alter ego claim against Student Management Group is dismissed for failure to state a claim.

## II. Negligence claim against Student Management Group.

In laying out his negligence claim against Defendants, Fischer lists the many duties International Student Exchange owed him as an exchange student in its program. The Complaint does not allege that Student Management Group owed Fischer any specific duty. In fact, the Complaint's only reference to Student Management Group's responsibility is that "[Student Management Group], as

9

[International Student Exchange]'s representative and agent, shared the same duties as [International Student Exchange]." (Doc. 45 at 13.) Fischer sets forth no facts to support this assertion. In the fact section of the Complaint, the only substantive reference to Student Management Group asserts that, "[b]ecause [Student Management Group], by virtue of the services provided by [International Student Exchange], stood to make a significant amount of money from each foreign exchange student sponsored, both entities were motivated to place [Fischer] with the Preiss family." (Doc. 45 at 6.) The Complaint does not offer facts to support the allegations that Student Management Group stood to profit from International Student Exchange's placement of students, that Student Management Group was motivated to place Fischer with the Preiss family, or that Student Management Group was International Student Exchange's representative and agent. Although all factual allegations in a complaint must be accepted as true, *Knievel*, 393 F.3d at 1072, conclusory allegations and unwarranted inferences like the ones leveled at Student Management Group are insufficient to survive a motion to dismiss, *Johnson*, 653 F.3d at 1010. Fischer's negligence claim against Student Management Group is dismissed for failure to state a claim.

**III. Breach of contract claim against International Student Exchange.**

Fischer claims a breach of contract claim against International Student

Exchange. (Doc. 45 at 18.) The contract International Student Exchange allegedly breached is a contract between it and the German company, Educational Consulting and Student Exchange. Fischer is not a party to the contract he claims was breached. (*Id*.) He asserts that Montana law governs the contract. (Doc. 57 at 9.) International Student Exchange insists that New York law governs the contract and that Fischer may not assert a breach of contract claim against it because he is neither a party to the contract nor an intended third-party beneficiary. (Doc. 69 at 3; Doc. 52 at 15.) International Student Exchange is correct.

    A.    **Applicable Law**

The contract between International Student Exchange and Educational Consulting and Student Exchange provides, in relevant part, "[t]his Agreement is made under the laws of the State of New York and it is mutually agreed that any conflict hereunder shall be resolved under said laws or by arbitration under the regulations of the New York Board of Arbitrators." (Doc. 53-1 at 6.) Conflict of laws rules determine whether this Court should enforce the parties' choice-of-law provision.

"To determine the applicable substantive law, a federal court sitting in diversity applies the choice-of-law rules of the forum." *Narayan v. EGL, Inc.*, 616

F.3d 895, 898 (9th Cir. 2010) (citing *Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 (9th Cir. 2005)). Montana relies on the *Restatement (Second) of Conflict of Laws* § 187(2)(b) (1971) to determine the validity of a choice-of-law provision in a contract. Montana will apply the law of the state chosen by the parties to govern their contract unless three elements are met: "(1) if, but for the choice-of-law provision, Montana law would apply under § 188 of the Restatement [(Second) of Conflicts of Law]; (2) if Montana has a materially greater interest in the particular issue than the state chosen by the parties; and (3) if applying the state law chosen by the parties would contravene a fundamental policy of Montana." *Modroo v. Nationwide Mut. Fire Ins. Co.*, 191 P.3d 389, 400 (Mont. 2008).

Section 188 of the *Restatement* provides that contracts are governed by the law of the state that has the most significant relationship to the transaction. *Great American Assur. Co. v. Discover Prop. and Cas. Ins. Co.*, 779 F. Supp. 2d 1158, 1165–1166 (D. Mont. 2011) (quoting *Modroo*, 191 P.3d at 400) (Molloy, J.). In this case, International Student Exchange is a California corporation with its principal place of business in New York, (Stip. Facts, Doc. 70 at 4), and Educational Consulting and Student Exchange is a German corporation, (Doc. 45 at 4). Neither entity has any connection to Montana. Since International Student Exchange has its principal place of business in New York and likely will perform

12

many of its obligations under the contract in New York, the State of New York has the most significant relationship to the transaction and certainly a more significant relationship to the transaction than the State of Montana.

To determine which state has a materially greater interest in the litigation, Montana looks to the *Restatement* § 188 factors: "(a) the place of contracting; (b) the place of negotiation of the contract; (c) the place of performance; (d) the location of the subject matter of the contract; and (e) the domicile, residence, nationality, place of incorporation, and place of business of the parties." *Ticknor v. Choice Hotels Intl. Inc.*, 265 F.3d 931, 938 (9th Cir. 2001) (citing *Keystone, Inc. v. Triad Sys. Corp.*, 971 P.2d 1240, 1242 (Mont. 1998)). Here, the place of contracting, negotiation, and performance is presumably New York, since International Student Exchange is headquartered in New York. The subject matters of the contract, foreign exchange students, are residents of Germany and are placed with host families all over the United States. The parties to the contract are a California corporation and a German company. Montana has almost no interest in the contract being litigated and certainly less of an interest than New York when it comes to choice of law.

The third part of the test is whether application of New York law would contravene a fundamental Montana policy.

> The Montana Supreme Court has taken a broad view of what constitutes public policy, declaring that "[f]or choice of law purposes, the public policy of a state is simply the rules, as expressed in its legislative enactments and judicial decisions, that it uses to decide controversies." The Montana Supreme Court has also expressed antipathy toward choice of law provisions that might require enforcement of a contractual provision that would be invalid under Montana law.

*Ticknor*, 265 F.3d at 938–939 (quoting *Phillips v. Gen. Motors Corp.*, 995 P.2d 1002, 1015 (Mont. 2000)). Although application of New York law would contravene Fischer's interests, (Doc. 57 at 17), no facts are alleged that lead to the conclusion that the application of New York law would contravene a fundamental Montana policy.

Since none of the three elements of the *Modroo* test are met, 191 P.3d at 400, the law of the forum state dictates enforcement of the parties' choice-of-law provision. New York law applies to the contract.

### B. Third-party beneficiary.

Fischer acknowledges that he is not identified as a beneficiary in the contract between International Student Exchange and Educational Consulting and Student Exchange but claims that he is an intended third-party beneficiary of the contract because "he and like [exchange] students would clearly benefit from it." (Doc. 45 at 19.) This claim is not a cognizable legal theory.

"The third-party beneficiary concept arises from the notion that it is just

14

and practical to permit the person for whose benefit the contract is made to enforce it against one whose duty it is to pay or perform." *Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*, 485 N.E.2d 208, 211 (N.Y. 1985) (internal quotations and citations omitted). "Under New York law in order to recover as a third-party beneficiary of a contract, a claimant must establish that the parties to the contract intended to confer a benefit on the third party." *Subaru Distributors Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 124 (2d Cir. 2005) (citing *State of Cal. Pub. Employees' Ret. Sys. v. Shearman & Sterling*, 741 N.E.2d 101, 104 (N.Y. 2000)). New York adopted the *Restatement (Second) of Contracts* § 302 for analysis of third-party-beneficiary questions. *Subaru Distributors Corp.*, 425 F.3d at 124 (citing *Fourth Ocean Putnam Corp.*, 485 N.E.2d at 212). According to the *Restatement*,

> Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

*Restatement (Second) of Contracts* § 302(1) (1981). "A contractual requirement that the promisor render performance directly to the third party shows an intent to benefit the third party," whereas "dismissal of a third-party-beneficiary claim is

appropriate where the contract rules out any intent to benefit the claimant." *Subaru Distributors Corp.*, 425 F.3d at 124 (internal citations omitted). New York courts "have emphasized when upholding the third party's right to enforce the contract that no one other than the third party can recover if the promisor breaches the contract . . . or that the language of the contract otherwise clearly evidences an intent to permit enforcement by the third party." *Fourth Ocean Putnam Corp.*, 485 N.E.2d at 21. The Second Circuit holds that "[c]ertain provisions in . . . [a] contract strongly suggest that the two parties to the contract intended the contract to concern and to benefit only themselves." *Subaru Distributors Corp.*, 425 F.3d at 125. These provisions include the recital of purpose of the agreement, if it "is meant 'to set forth the functions and responsibilities of the parties hereto' and fails to mention any purpose of benefitting . . . anyone else," and a non-assignment clause, which "suggests an intent to limit the obligation of the contract to the original parties." *Id*.

The contract between International Student Exchange and Educational Consulting and Student Exchange declares itself to be "made and entered into by and between International Student Exchange . . . and [Educational Consulting and Student Exchange]." (Doc. 53-1 at 2.) The contract at issue makes no reference to an intended third-party beneficiary and in fact contains a non-assignment clause:

16

"This Agreement may not be assigned to any other party or legal entity without the prior written consent of [International Student Exchange]." (*Id*. at 6.) The "whereas" clause and other terms of the contract indicate the intention of the contracting parties was to "appoint [Educational Consulting and Student Exchange] as [International Student Exchange]'s independent contractor for the promotion of the cultural exchange program in Germany." (*Id*. at 2.) Fischer cannot show that he would be the only party allowed to recover under the contract in the case of a breach and he cannot show intent on the part of the contracting parties to permit enforcement of the contract by third parties. The contract's stated purpose and the existence of a non-assignment clause mean that the contracting parties intended the contract to benefit only themselves. New York law does not allow Fischer to recover as a third-party beneficiary under the contract between International Student Exchange and Educational Consulting and Student Exchange. Since his Complaint lacks a "cognizable legal theory," on this claim, dismissal under Rule 12(b)(6) is appropriate. *Balistreri*, 901 F.2d at 69.

**IV.** **Negligence claim against International Student Exchange.**

A negligence claim consists of four elements: duty, breach, causation, and damages. *Fisher v. Swift Transp. Co.*, 181 P.3d 601, 606 (Mont. 2008). Fischer alleges that 22 C.F.R. § 62.25(d) places numerous duties on International Student

17

Exchange, including a duty to ensure all organizational employees and agents are adequately trained to respond to student allegations of sexual misconduct, and that 22 C.F.R. § 62.25(j) imposes a duty on International Student Exchange to adequately screen potential host families. (Doc. 45 at 10–13.) He further alleges that International Student Exchange breached its duties to him by, *inter alia*, placing him in a home in which he was sexually abused by his host father, and that as a direct and proximate result of International Student Exchange's negligence, he sustained damages. (*Id*. at 13–14.)

Accepting all factual allegations in the Complaint as true and construing the pleadings in the light most favorable to him, *Knievel*, 393 F.3d at 1072, Fischer has stated a claim for relief that is plausible on its face, *Iqbal*, 556 U.S. at 678. Fischer's negligence claim against International Student Exchange stands so the motion to dismiss is denied.

## V. Leave to amend the Complaint.

In his brief in opposition to Defendants' motion to dismiss, Fischer seeks leave to amend his Complaint if certain claims are dismissed because factual allegations were insufficiently pled. (Doc. 57 at 29–30.)

A party may amend its complaint "once as a matter of course at any time before a responsive pleading is served." Fed. R. Civ. P. 15(a). Thereafter, a party

may amend only with leave of the Court or by written consent of the adverse party. *Id.* The Federal Rules express a strong policy in favor of freely granting leave to amend "when justice so requires." *See Forman v. Davis*, 372 U.S. 178, 182 (1962). A district court's discretion to grant leave to amend is conditioned by factors such as undue delay, dilatory motive, bad faith, repeated failure to cure deficiencies by previous amendments, undue prejudice, and futility of the proposed amendment. *United States v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1052 (9th Cir. 2001) (citing *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 538 (9th Cir. 1989)). These factors are not given equal weight; futility of amendment alone may justify denial of a motion for leave to amend. *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). However, a court's scheduling order limits the time to amend the pleadings, Fed. R. Civ. P. 16(b)(3)(A), and this schedule "may be modified only for good cause and with the judge's consent," Fed. R. Civ. P. 16(b)(4).

While Fischer's current claims against Student Management Group consist more of legal elements than facts, if he were to amend his claims to include facts, such amendment might not be futile. On the other hand, Fischer can plead no additional facts to save his breach of contract claim against International Student Exchange, and because the claim is not based on a cognizable legal theory, any

amendment would be futile. Therefore, despite the Scheduling Order in this case, good cause may exist in the idea of dealing with the issues on the merits so Fischer is granted leave to amend his Complaint but only with respect to the claims against Student Management Group.

IT IS ORDERED that Defendants' Motion to Dismiss (Doc. 51) is GRANTED in part and DENIED in part. Plaintiff's alter ego and negligence claims against Student Management Group are dismissed, with leave to amend, and such pleading must be filed within 14 days of the date of this Order. Plaintiff's breach of contract claim against International Student Exchange is dismissed with prejudice. Defendants' motion is denied with all other respects.

DATED this 5th day of May, 2015.

DONALD W. MOLLOY, DISTRICT JUDGE
UNITED STATES DISTRICT COURT